Avery, J.
The will which has given rise to this controversy is quite short, every devise and bequest being found in the the following words:
“ I do make and ordain this my last will and testament re- • specting the disposition of my worldly substance.
“ In the first place, I give and bequeath unto my beloved wife, Mary Howe, one half of all my real estate, and also one half of all my personal property.
“ In the second place, it is my wish and desire, that my mother, Rachel Howe, should have a comfortable support during her natural life, out of the remaining half of my personal property.
“ In the third place, it is my wish and desire, that the property may be kept together until my youngest child shall become of age, and to make use of it to the best advantage for the supporting and educating my children, and at the time the youngest shall become of age, the property shall then be disposed of and divided equally amongst my children.”
The testator of this will has disposed of all his estate.
According to the interpretation put upon it by the complainant’s counsel, he has given to his widow, besides the one half of the personal property, the one half in fee simple of all his real estate. If this be so, then the complainant is entitled to the partition of the lands, according to the- prayer of his bill, by which he v/ill become the owner in- fee and in severalty, of one half the premises, or rather, as under a mis *54 taken apprehension of the extent of his mother’s interest, he had, before purchasing from her, conveyed away with covenants of warranty, an eighth of what he now supposes she took under the will, he will only be entitled to seven-sixteenths of the whole.
The testator named in this will no other objects of his bounty but his wife, his mother, and his children. For all these he evidently designed to make some substantial provision. If we agree with the complainant’s counsel, holding that one half of the estate is given to the widow, he has doubtless made substantial, nay, large provision for her, large it is meant, in reference to the share she takes.
Then, in the second place, he has made secure and ample provision for his mother, having charged her support, a comfortable support, during her natural life, upon the other half, which is all the remainder of his property, real and personal. It is a charge that, if necessary, may take it all. Now, if it be true that he has excluded his children from all inheritance and interest in the first half, it may happen that they will receive nothing, for it is certain that he has so incumbered the remaining half as to render it not altogether improbable that they take nothing from that.
He had a family .of eight children, needing, as he was conscious, support and education, the youngest not seven, years old. Would he be likely to fix so securely a provision for the two first named objects of his care, and at the same time neglect to provide for the rest ?
This will is drawn unskillfully; by a person unused to the precision of thought and language required in penning such an instrument, when it is designed to fix specific charges upon land, or to contain provisions at all complicated.
The two first clauses standing by themselves are intelligible ; but the question must necessarily arise, are they affected or controlled by the sueceding clause ; particularly, the complainant is interested to inquire, is the first so controlled ? By Ms reading, the property to be kept together, in the above clause, is the remaining half of the real and personal property named in the second clause.
*55 To what purpose, and in what sense, it maybe asked, keep together the portions, real and personal, of this remaining half?. If the testator had then in his mind his whole property, it would be reasonable and natural enough that he should think of keeping together the two halves that he had just treated as, to a certain extent, separated. But what was the intention of the testator in this third clause, whether the expressions employed there be taken in connection with other parts of the will, or considered by themselves ? . He commences with a purpose of disposing by will of his worldly substance — that is, clearly, of all his property. He gives one half of it to his wife, and charges upon the other half the support of his mother for life. Then comes the clause in controversy :• “ In the third place, it is my wish and desire that the property may be kept together.” What property ? Not the half, or the remaining half, but the property. The phrase, without an additional word, may apply to and -embrace his property as a whole, but it needs the help of some other word to qualify it and point it to the half. This view of what the testator meant here, when speaking of property, would seem to be strengthened by the direction which he -gives, “ to make use of it to the best advantage for supporting and educating his children.” It cannot but appear to be limiting his language, in a manner which he never intended, to suppose that he contemplated, when making this interesting provision, only what might remain of the half, after furnishing his mother’s support.
The testator further declares in this clause, that when the youngest child shall become of age, the property shall be disposed of and divided equally among his children. Here the testator intended, without doubt, to control one or both of the other clauses. If he meant by property, what has been above supposed, then his words apply to both; if not, they still limit the provision, which was for life to the mother, and make it terminate when the youngest child comes of age. If he intended to limit either of the former clear provisions, he may have intended to limit' both. If it be said that, from *56 the age of his mother, he could have no reason to suppose she would ever be deprived of her comfortable support; it will be conceded that this consideration would probably occur to his mind. How old his mother was at the death of the testator, does not appear. It may be presumed, though it will be but a presumption, that she was considerably older than his wife. The age of the wife is stated : she was nearly fifty. It is argued, in behalf of the defendants, that as she was so far advanced in life, the testator, at the time of making his will, might have thought she would not be living when his youngest child should be of age. The omission to provide for his wife, upon the supposition that she might be living, after the youngest child had reached the age of twenty-one years, is felt to be a consideration of great weight. But the explanation suggested is not without plausibility; and it is rendered probable that he thought his wife secure in a provision for life from the fact, that immediately after his death it was understood in the family, by the widow and others interested, that she took an estate for life.
From these considerations we think it is evident that the testator did not intend to give to his wife an estate in fee simple in the half of his lands.
It is very clear, indeed, that the language of the first clause would carry a fee. The words all my real estate, and many similar expressions, are doubtless sufficient to pass the inheritance. But if the intention of the testator is to govern, in the construction of a will, then a devise, though plain and obvious in its terms, may be altered and controlled by other expressions found in the will. Still it may be admitted to be true, that the apparent intention, under circumstances, is liable to be controlled by technical rules and technical expressions. There is no technical expression however in this devise to his wife, to hinder the application of the rule, that the intention governs. Having arrived at the conclusion that such was the intention of the testator, we construe this will to limit the wife’s estate in this land to the period when the youngest child arrived at age. Of course her interest was *57 at an end before she made the conveyance, and complainant took nothing by his purchase. This disposes of the case without considering the other question made by the defendants, that the interest of the widow was limited to an estate for life, by the construction of the párties interested.
The complainant in his bill sets up a title in fee to an undivided part of the premises; we find that he has no interest.

The bill must be dismissed.